**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHRISTINA LINN OWENS** | § | |
| | § | |
| **V.** | § | |
| | § | **A-11-CA-811 LY** |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATED MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint seeking reversal of the final decision of

the Social Security Administration (Clerk's Doc. No. 5); Plaintiff's Brief in Support of Plaintiff's

Appeal (Clerk's Doc. No. 16); and Defendant's Brief in Support of the Commissioner's Decision

(Clerk's Doc. No. 18).  Also before the Court is the Social Security record filed in this case (Cited

as "Tr.").

The undersigned submits this Report and Recommendation to the United States District

Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the

United States District Court for the Western District of Texas, Local Rules for the Assignment of

Duties to United States Magistrate Judges.

**I.  General Background**

Plaintiff Christina Linn Owens ("Plaintiff") filed her application for disability and disability

insurance benefits under Title II and Title XVI of the Social Security Act ("Act") on January 7, 2009,

alleging disability since March 27, 2008, due to fibromyalgia, neuropathy in her hands, swelling of

the lower legs and knees, severe shoulder pain, hypertension and depression.  After a hearing, the

Administrative Law Judge ("ALJ") issued his decision on June 15, 2010, finding that Plaintiff was not disabled under the Act.  See Tr. at 23.  The Appeals Council declined to review the ALJ's decision on July 22, 2011.  See Tr. at 1.  Accordingly, the ALJ's decision became the final administrative decision of the Commissioner for purposes of the Court's review pursuant to 42 U.S.C. § 405(g).  Plaintiff filed the instant lawsuit on September 19, 2011, alleging that the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence and applies an erroneous standard of law.

## II.  Standard of Review

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1.  a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2.  a claimant will not be found to be disabled unless he has a "severe impairment";

3.  a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4.  a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5.  if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520.  A finding of disability or no disability at any step is conclusive and terminates the analysis.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work."  *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C.  § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).  Substantial evidence is more than a scintilla of evidence but less than a preponderance-in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *Id.* at 174.  However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  If the Court finds substantial evidence to support the decision, the Court must uphold the decision.  *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) ("If the . . . findings

are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

### III.  The ALJ's Findings

The ALJ determined that Plaintiff had severe impairments of fibromyalgia, neurosyphilis hypothyroidism, carpel tunnel syndrome, cerebrovascular disease, lower back pain, depression and anxiety.  However, the ALJ found that Plaintiff's impairments individually or in combination did not meet or equal any of the listed impairments under the regulations.  The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to: lift, carry, push and pull 20 pounds occasionally and ten pound frequently; stand and/or walk for four to six hours and to sit for six hours at a time with the option of voluntarily sitting and standing throughout the day; frequently handle, finger, feel and reach with her upper extremities; occasionally climb ramps and stairs, but not ladders, ropes or scaffolds and must avoid working at unprotected heights or hazardous moving machinery; occasionally balance, stoop, kneel, crouch and crawl; concentrate for extended periods; interact appropriately with co-workers, supervisors and the public and respond appropriately to changes in the routine work environment; and understand, remember and carry out detailed but not complex instructions.  Accordingly, the ALJ found that Plaintiff could perform her past relevant work as an assembler of circuit boards.  Thus, the ALJ concluded that Plaintiff was not under a disability as defined by the Act.

### IV.  Analysis

Plaintiff alleges that the ALJ (1) posed a hypothetical question to the vocational expert that did not reasonably incorporate all disabilities recognized by the ALJ, (2) failed to properly assess her RFC, and (3) failed to giver proper weight to her treating physicians' opinions.

4

A.      **Hypothetical Question to the VE**

Plaintiff complains that the hypothetical question posed to the vocational expert ("VE") in this case was defective because it did not incorporate all of Plaintiff's disabilities recognized by the ALJ.   During the hearing, the ALJ's posed the following hypothetical question to the VE:

> Well, assume you have an individual with that vocational profile. Assume that this individual, during an eight-hour workday, can sit up to six hours; stand, stand and walk four to six hours, or up to six hours; allows for some sitting and standing. Assume that the person can lift and carry up to 20 pounds occasionally, but only 10 pounds frequently; can push or pull to those weight; can frequently handle, finger, feel, and reach in the upper extremities; occasionally crawl, or squat, or stoop, or bend, or climb; no climbing of ladders; no working at heights or around hazardous machinery. Assume that this person can concentrate adequately for extended periods of time. Assume that the person would respond appropriately to changes in a routine work environment, and could perform detailed tasks. Now, would this person -- would these abilities allow the person to perform any of the past relevant work?

Tr. at 61.  The VE responded that the hypothetical claimant would be able to perform several jobs including assembly work, cashier, wire worker and inspector of electrical equipment.

The Fifth Circuit has created a two-part test for determining whether an ALJ's hypothetical question constitutes reversible error: first, the question must include all *disabilities* of the claimant recognized by the ALJ; and second, the claimant or his representative should be allowed to correct deficiencies in the ALJ's question.  *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Plaintiff complains that the hypothetical was defective because it failed to include some of her impairments recognized by the ALJ including that she has "moderate difficulties" with concentration, persistence and pace, "mild restrictions" with daily living and social functioning and that she has difficulty with complex instructions.  Tr. at 16.  However, as explained by the Fifth Circuit in *Bowling*, the ALJ's question will not produce reversible error if it incorporates "all *disabilitie*s of the claimant recognized by the ALJ."  *Bowling*, 36 F.3d at 436 (emphasis added).

5

Thus, the  question "is not required to include every physiological impairment suggested by the evidence" but rather merely must "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Maldonado v. Astrue*, 2009 WL 398748 at *6 (W.D. Tex. Feb. 18, 2009) (citations omitted).

Even if the Court were to find that the hypothetical question was inadequate in this case, it would not be fatal to the Commissioner's decision, since Plaintiff's attorney was "afforded the opportunity to correct deficiencies in the ALJ's question..." *Bowling*, 36 F.3d at 436.  During the hearing, Plaintiff's counsel was given the opportunity and did in fact further question the VE regarding Plaintiff's alleged additional impairments. Tr. at 62-66.  Accordingly, the Court rejects Plaintiff's claim that the hypothetical questions was fatally flawed and that the case must be reversed on this basis.  *See Vaught v. Astrue*, 2008 WL 828942 at * 3 (5th Cir. March 28, 2008) (finding no reversible error regarding defective hypothetical where claimant was given opportunity to question the VE and thus could have corrected any errors in the hypothetical); *Reynaud v. Astrue*, 2007 WL 1119188 at *2 (5th Cir. April 16, 2007) (same).  Finally, the Court notes that "[p]rocedural perfection in administrative proceedings is not required" and courts "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

**B.      Did the ALJ properly assess Plaintiff's RFC?**

Plaintiff next argues that the ALJ's assessment of her RFC with regard to her mental capacity was not based on substantial evidence since he did not base the RFC on "any medical statements, CE Reports, or PRT completed by a medical expert." Plaintiff's Brief at p. 9.  Plaintiff also contends that the ALJ failed to make a clear function-by-function analysis in determining her RFC.

The ALJ is solely responsible for determining an applicant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). After evaluating all of the evidence in the record, the ALJ concluded that "claimant retains the capacity to concentrate for extended periods, interact appropriately with co-workers, supervisors and the public, and respond appropriately to changes in the routine work environment," and that Plaintiff could "understand, remember and carry out detailed but not complex instructions." ALJ's Op. at 5. The ALJ concluded that Plaintiff had the RFC to perform some light work activity.

Contrary to Plaintiff's assertions, the ALJ clearly relied on medical evidence and medical opinions, as well as Plaintiff's own testimony, in assessing Plaintiff's RFC with regard to her mental capacity. In determining her RFC, the ALJ specifically referenced findings from Plaintiff's mental status evaluation, her psychiatric treatment records and Plaintiff's own testimony at the hearing. For example, Plaintiff's consultative mental status examination – performed by Dr. Linda Ludden, Ed.D., on April 12, 2009– revealed that Plaintiff had no need for supervision, was capable of caring for her own personal needs and was capable of handling her own finances. Tr. 373-74. In addition, Dr. Ludden noted that Plaintiff had only mild difficulties with social functioning since she could get along with others, had a good relationship with her parents and got along well with authority figures. Tr. at 374. With regard to concentration, persistence and pace, the ALJ noted that Plaintiff had only reported moderate difficulties since Plaintiff could spell the words "world" and "card" forward and backward. He also noted that the Dr. Ludden's examination did not show any episodes of decompensation. Finally, the ALJ noted that Plaintiff's mental status exam "was mostly normal except for sad mood and dysphoric effect." ALJ's Op. At 7.

The ALJ also found that Plaintiff's "credibility regarding the severity of her mental symptoms is reduced by several factors." ALJ's Op. At p. 7. For example, the ALJ noted that during her first visit to her psychiatrist, Dr. Joanne Sotelo, in almost a year, Plaintiff "admitted" that she had to "see a psychiatrist in order to keep her social security disability." ALJ's Op. at 7 and Tr. at 499. The ALJ also noted that although Dr. Sotelo found that Plaintiff's mood was sad and dysphoric, she also found that Plaintiff appeared to be in no distress, had good rapport and eye contact and had normal and logical thought processes. Plaintiff was prescribed Zoloft, Sonata and Klonopin and was told to come back for a follow-up appointment in one or two months. Tr. at 500. Despite Dr. Sotelo's instructions, Plaintiff failed to show up for her follow-up appointments with Dr. Sotelo. A claimant's decision to forgo prescribed medical treatment reflects upon Plaintiff's credibility with regard to the seriousness of her impairments. *See Johnson v. Sullivan*, 894 F.2d 683, 685 N. 4 (5th Cir. 1990) (plaintiff would not be found disabled where he failed to follow the treatment regimen prescribed by his physicians).

In evaluating Plaintiff's credibility, the ALJ further noted that there was "a large gap" in treatment records between July 2008 and April 2009, and no medical records documenting any treatment for Plaintiff after April 2009. Finally, the ALJ noted that during the hearing, Plaintiff "admitted that her depression medications have helped a good deal, and reported that her symptoms were much worse when she missed three days of medication." ALJ's Op. at 6. *See Johnson v. Bowen*, 864 F.2d 340, 346 (5th Cir. 1988) (holding that substantial evidence supported finding that claimant was not disabled where medical records showed that claimant responded to antidepressant medication and treatment); *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980)(conditions controlled or controllable by treatment are not disabling). The Court finds that substantial evidence supports

the ALJ's credibility findings. "It must be remembered that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (internal citations and quotations omitted).

The Court also rejects Plaintiff's argument that the case must be remanded because the ALJ failed to make a "function-by-function" analysis when assessing Plaintiff's RFC. In *Myers v. Apfel*, 238 F.3d 617, 620-21 (5th Cir. 2001), the Fifth Circuit held that when making an RFC determination, an ALJ must perform a function-by-function assessment of a claimant's capacity to perform sustained work-related physical and mental activities. As noted above, the ALJ based his decision in part on the medical report of Dr. Ludden, which contains a general function-by-function analysis of Plaintiff's impairments. In addition, Dr. Leela Reddy, M.D., reviewed Plaintiff's records and completed a Mental RFC report on June 5, 2009, which included a functional capacity assessment of Plaintiff. Dr. Reddy concluded that Plaintiff could "understand, remember, and carry out detailed but not complex, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings." Tr. at 381. The Court finds that the ALJ's RFC determination in this case satisfies *Myers* and is based upon substantial evidence. *See Beck v. Barnhart*, 2006 WL 3059955 at * 5 (5th Cir. Oct. 27, 2006) (stating that ALJ's RFC assessment satisfied *Myers* where based on Dr.'s reports in the record contained a general function-by-function assessment); *Onishea v. Barnhart*, 2004 WL 1588294 (5th Cir. July 16, 2004) (stating that an RFC assessment based in part on the function-by-function analysis of claimant's exertional limitations contained in a state examiner's medical report satisfies the legal standard set forth in *Myers* and SSR 96-8p).

9

**C.     Plaintiff's Treating Physician's Opinions**

Lastly, Plaintiff argues that the ALJ improperly rejected the opinions of Drs. Pascal Gaudreault and Joanne Sotelo without applying all of the factors listed in 20 C.F.R. § 404.1527(d)(2), citing *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

"[O]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).  But the treating physician's opinions are not conclusive.  *Id.*  "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Id.*  Good cause may exist when the physician's statements are conclusory and brief; when statements are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; otherwise unsupported by the evidence; or when the treating physician is not credible because (s)he is "leaning over backwards to support the application for disability benefits." *Scott*, 770 F.2d at 485.  In addition, conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance.  See 20 C.F.R. §§ 404.1527(e), 416.927(e); see also *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In January 2010, Dr. Pascal Gaudreault, M.D., opined that due to Plaintiff's impairments of fibromyalgia, neurosyphilis, cervical and lumbar disc disease, carpal tunnel syndrome, and chronic pain, Plaintiff could only lift and carry a maximum of 10 pounds, sit for less than two out of eight hours, and stand and/or walk for less than two out of eight hours.  Dr. Gaudreault also found that

Plaintiff could not handle, finger or reach, and that pain would interfere with Plaintiff's attention and concentration "over 2/3 of the day." Tr. 507.

      The ALJ rejected Dr. Gandreault's opinion finding that "it is not supported by or consistent with the medical evidence of record."  Specifically, the ALJ noted that Plaintiff's April 2009 physical examination was normal except for tenderness to palpitation of the lumbar spine and reduced lumbar flexion.  In addition, there was no atrophy or joint effusion, Plaintiff had a normal heel-toe gait and 5/5 muscle strength throughout.  Moreover, Plaintiff's straight leg raises were negative both seated and supine and her lumbar spine MRI was unremarkable.  The ALJ noted that Plaintiff was prescribed Vicodin and physical therapy, but pointed out that there was no indication that Plaintiff underwent the prescribed physical therapy.  Failure to follow prescribed treatment is a proper credibility factor and indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  The ALJ also considered Plaintiff's testimony that Vicodin helped her pain, and on good days, completely resolved her pain.  If medication can alleviate symptoms, the symptoms are not disabling.  *Johnson*, 894 F.2d at 686.  The Court finds that the ALJ appropriately rejected Dr. Gandreault's opinions since they were inconsistent with other medical records. *See* 20 C.F.R. § 404.1527(d); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987) (citations omitted) (holding that an ALJ is free to reject a treating physician's opinions when the medical evidence supports a contrary conclusion).

      In addition, it appears that Dr. Gandreault only examined Plaintiff on a few occasions and last saw her  in August 2009– a year before issuing his medical source statement.  A physician with a history of only intermittent, infrequent treatment arguably lacks the detailed, longitudinal perspective of a claimant's impairments that would qualify him as a treating physician under the

regulations.  *See* 20 C.F.R. § 1527(d)(2).  See also, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (physician who examined claimant on one or two occasions is not a treating source); *McCoy v. Astrue*, 2010 WL 5812954 at 5 (N.D. Tex. Dec. 16, 2010) (same).  While the ALJ found that Dr. Gandreault was in fact a treating source, the Court finds that his lack of long-term treatment is certainly a factor which supports the ALJ's finding that Dr. Gandreault's opinion was not entitled to controlling weight.

Plaintiff further argues that the ALJ erred in rejecting some of Dr. Joanne Sotelo's conclusions regarding Plaintiff's mental impairments.  In January 2010, Dr. Sotelo opined that due to severe depression and anxiety, Plaintiff could not maintain attention for two-hour segments, maintain regular attendance, perform at a consistent pace, and could not understand, remember and carry out detailed instructions.  The ALJ rejected this opinion finding that it was inconsistent with substantial medical evidence in the record. In addition to other evidence in the record which conflicts with Dr. Sotelo's opinion (as summarized above in the Court's RFC discussion), the ALJ also relied on other findings from Dr. Sotelo which undermined her conclusions such as her finding that Plaintiff can interact appropriately with the public, maintain socially appropriate behavior, sustain an ordinary routine and respond appropriately to changes in a routine work setting.  An ALJ is not required to adopt all portions of a physician's medical reports or opinions.  *Smith v. Astrue*, 2010 WL 6268443 at * 9 (N.D. Tex. Sept. 20, 2010).  The Court finds there was good cause to reject Dr. Sotelo's opinions since there was substantial evidence in the record undermining it and Dr. Sotelo only examined Plaintiff on a few occasions. *See Id.*

Lastly, the Court finds that the ALJ complied with 20 C.F.R. § 404.1527(d)(2) and the Fifth Circuit's ruling in *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).  Although *Newton*, does state

that the ALJ must consider each of the factors in § 404.1527(d)(2) when rejecting or giving little weight to a treating specialist's opinion, that decision also states that

> [t]he Court concludes that, *absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

*Id.* at 453 (emphasis added).  As the Fifth Circuit has recently stated, "[t]he plain implication of that statement is that where there is reliable medical evidence from a treating or examining physician that controverts the claimant's physician, the detailed inquiry of each factor in § 404.1527(d)(2) is unnecessary." *Rollins v. Astrue*, 2012 WL 874571 at * 4 (5th Cir. Mar. 15, 2012).  In addition, courts have found that *Newton* only requires the ALJ to "consider" each of the factors set forth in § 404.1527(d) and articulate good reasons for its decision to accept or reject the treating physician's opinion.  *McCoy*, 2010 WL 5812954 at *4.  Thus, the ALJ need not recite each factor "as a litany in every case." *Id.*  The Court finds that the ALJ appropriately rejected the treating physicians' opinions because there were inconsistent with other medical records and evidence in the record.

Finally, any error in the ALJ's failure to walk explicitly through each factor in § 404.1527(d)(2) was harmless. *Rollins*, 2012 WL 874571 at * 4.  Again, "[p]rocedural perfection in administrative proceedings is not required" and courts "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays*, 837 F.2d at 1364.

## V.  Recommendation

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

## VI.  Warnings

The  parties  may  file  objections  to  this  Report  and  Recommendation.    A  party  filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar  that  party  from  de  novo  review  by  the  district  court  of  the  proposed  findings  and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To  the  extent  that  a  party  has  not  been  served  by  the  Clerk  with  this  Report  & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of August, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE